UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
BRIAN J. MAHON,

                         Plaintiff,                  **MEMORANDUM & ORDER**
          - against -                             01 Civ. 3430 (DRH) (MLO)

TOWN OF ISLIP, LAURA PARKER, JOHN
SCIMECA, TIM SHEA, JOE MANDANICI,
EMILY PINES, PETE MCGOWAN, P/O
SIMPSON, SUFFOLK COUNTY
DEPARTMENT OF SOCIAL SERVICES,
and FLEET MORTGAGE CORPORATION,

                       Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**APPEARANCES :**

**BRIAN J. MAHON**
Plaintiff Pro Se
139 Meroke Lane
East Islip, New York 11730

**CHRISTINE MALAFI, ESQ., SUFFOLK COUNTY ATTORNEY**
Attorney for Suffolk County & Defendant Simpson
100 Veterans Memorial Highway
P.O. Box 6100
Hauppauge, NY 11788
By: Brian C. Mitchell, Esq., Assistant County Attorney

**VINCENT J. MESSINA, JR., ESQ., ISLIP TOWN ATTORNEY**
Attorney for Town of Islip
655 Main Street
Islip, NY 11751
By: Richard Hoffman, Esq.

**ROSENBERG CALICA & BIRNEY LLP**
Attorney for Defendant Scimeca
100 Garden City Plaza, Suite 408
Garden City, NY 11530
By: Judah Serfaty, Esq.

**HURLEY, District Judge:**

*Pro se* Plaintiff Brian J. Mahon ("Plaintiff" or "Mr. Mahon") brought the present suit against Defendants Town of Islip ("Islip"); Suffolk County Department of Social Services ("Suffolk County"); Laura Parker ("Parker"); John Scimeca ("Scimeca"); Tim Shea ("Shea"); Joe Mandanici ("Mandanici"); Emily Pines ("Pines"); Pete McGowan ("McGowan"); Bard Simpson ("Simpson"); and Fleet Mortgage Corporation ("Fleet") for violations of his civil rights, 42 U.S.C. § 1983 ("§ 1983"); conspiracy to violate his civil rights, 42 U.S.C. § 1985 ("§ 1985"); intentional infliction of emotional distress and financial hardship; and defamation of character. In a Memorandum and Order, dated February 12, 2004 ("Feb. 12 Order"), the Court dismissed all claims against Defendants Parker, Shea, Mandanici, Pines, McGowan and Fleet. (*See* Feb. 12 Order at 18-19.) Defendants Islip, Suffolk, Scimeca, and Simpson now move for summary judgment on the remaining claims. Because the submitted evidence demonstrates that the Defendants are entitled to judgment as a matter of law, the Court GRANTS Defendants' motions for summary judgment in their entirety.

*BACKGROUND*

The following summary of the facts is based upon Defendants' Local Rule 56.1 Statements, Plaintiff's affidavits in opposition, and the submitted evidence.

Plaintiff Mahon owned a one-story, zoned single family house in Islip, New York ("Islip house") from before 1986 through 2001. He moved his family out of the house sometime in 1996 or 1997 and began using the home as a boarding house. He never sought or obtained a rental permit.

In March 1996, an incident occurred involving Mr. Mahon's possession of a dog. The details that precipitated the involvement of the police are unclear, and make their way before this Court in the wake of a confrontational deposition hearing. (*See* Dep. of Bard Simpson, dated Dec. 10, 2004 ("Simpson Dep."), at 24-25.)[1] Apparently, Ira Mace ("Mace"), a former tenant of Mr. Mahon's, had moved out of the house because of unpaid rent. Mace called the Suffolk County Police, alleging that Mr. Mahon had confiscated Mace's dog in lieu of rent. Defendant Simpson, a Suffolk County Police Officer, reported to the scene where he spoke with Mr. Mahon regarding the animal.

Apparently, the dog was once Mace's, but he had transferred ownership of the animal to Mr. Mahon. Nevertheless, during Mahon's conversation with Defendant Simpson, Mace made off with the dog. The dog has since been returned to Mr. Mahon. (*See* Aff. of Brian J. Mahon in Opp'n to Defs. Suffolk's and Simpson's Mot. for Summ. J., dated Aug. 15, 2005 ("Mahon Aff. II"), ¶ 3 ("The dog in question is at this moment lying under the desk I'm typing at possibly awaiting another abduction by P.O. Simpson.").) Mr. Mahon alleges that Simpson behaved in a threatening manner at that time, but he provided no further details. On April 3, 1996, Mr. Mahon made a complaint to the Suffolk County Police Department relating the above events.

---

[1]At one point during the deposition, Ms. Rouse, attorney for Suffolk County, asked Mr. Mahon "Are you going to ask him a question, or are you going to continue to stare at him?" Mr. Mahon replied, "I'm furious, for the record, and he knows why." (Simpson Dep. at 24-25.) Later, when asked where he had attended college, Simpson responded, "Do I have to answer? I don't even want him knowing where I went to school at this point." (*Id.* at 26.) At other points, Mr. Mahon's line of questioning is aptly-described as bizarre. (*Id.* at 28 (Mahon: "Are you a lawyer?" Simpson: "No." Mahon: "Are you a judge." Simpson: "No, I am not." Mahon: "Do you recall our conversation in the bagel shop in East Islip?").)

At some time in 1998, approximately two years later, Mr. Mahon was issued several traffic summonses by Police Officer Simpson. After a hearing, Mr. Mahon admitted and was found guilty of having no license plate on his vehicle.

Plaintiff was cited on March 3, 1998 after County Police contacted the Department of Code Enforcement that the Islip house was being used as an illegal rental house and that one of the illegal tenants had been found dead in the house. Mr. Mahon does not dispute these allegations, but rather states that it "is inaccurate also there was not 4 deaths in the house Mr. Ortiz is exaggerating and embellishing to say the least." (Aff. of Brian J. Mahon in Opp'n to Defs. Islip and Scimeca's Mot. for Summ. J., dated Aug. 1, 2005 ("Mahon Aff. I") ¶ 4.)

In or about September 1999, Mr. Mahon applied for and was granted a building permit, allowing him to expand the Islip house. In October 1999, Mr. Mahon allowed Islip Town Code Enforcement Investigator Javier Ortiz ("Ortiz") to inspect the premises. During the inspection, Ortiz found that the house was being rented to a number of individuals, in contravention of local zoning ordinances. Ortiz issued three summonses to Mr. Mahon for renting without a permit, change of use, and an illegal shed. Because of these violations, the building permit was suspended and a stop work order was issued. Thereafter, Defendant Scimeca refused to reinstate the building permit.

In court proceedings before former defendant, New York State District Judge Emily Pines, Mr. Mahon pled guilty to unlawfully renting his premises to individuals for habitation without a rental permit, and allowing the premises to be used as an illegal boarding house. Mr. Mahon admitted that he illegally rented out his premises to individuals in six separate and

distinct bedrooms.² As part of his plea and conditional discharge, Mr. Mahon agreed to restore the premises to a one-family dwelling or obtain a rental permit for the premises.

Mr. Mahon failed to remove the illegal tenants or seek a rental permit after his January 2000 guilty plea. Nevertheless, he asked that the Islip house be reinspected so as to lift the building permit suspension. Islip officials informed him that he was not entitled to a lifting of the suspension so long as he continued to illegally rent the house without proper rental permits. On March 8, 2000, Mr. Mahon unsuccessfully attempted to withdraw his guilty plea.

On June 16, 2000, the Islip house was again inspected by Ortiz. Ortiz found that it was still inhabited by multiple tenants and that the prior violations were uncorrected. Ortiz issued nine more summonses, including change of use, interior maintenance violations, electrical violations, fire safety equipment, unlawful litter and debris, rental without permit, and permits required. Mr. Mahon does not dispute that the premises merited these violations.³

---

²Mr. Mahon's attempt to rebuff these factual assertions are unavailing because his denial is self-defeating: "The house was never used as a multi-family, and its capacity was never threatened as in the more spectacular cases in the news recently." (Mahon Aff. II ¶ 7.) Mahon goes on to state that Suffolk County's argument is a "classic case of NIMBYISM, a bunch of narrow minded elitist, civil servants with no plan what so ever [*sic*] on how to solve this social issue. I did not double and triple people up in a room and never received more than enough to pay my mortgage and utilities." (*Id.* ¶ 8.) "NIMBY" is apparently an acronym for "Not In My BackYard." *See* THE NEW DICTIONARY OF CULTURAL LITERACY (3d ed. 2002), *available at* http://www.bartleby.com/59/4/nimby.html. Thus, Mr. Mahon admits that he was renting the premises to multiple individuals, but is decrying the town policies that prevented him from doing so.

³Mr. Mahon argues that the violations were not his fault. "Angry tenants did the debauching of the house because they were being evicted . . . . It was the position of the [tenants] that they did not have to abide by the rules and conditions of the house because I was evicting them." (Mahon Aff. II ¶¶ 10-11.) Mr. Mahon goes on to reproach Suffolk County, saying, "All the while the [tenants] are now in open revolt against me. What planet do you people live on to destabilize my authority in my rental property and then cite me for not having it under control?" (*Id.* ¶ 14.)

Mr. Mahon now decries the service of the June 16th summonses because Ortiz served them on a tenant who was being evicted. According to Mr. Mahon, Ortiz did not serve the summonses on Mr. Mahon "so that they would not allow me the opportunity to go before another judge and [undo their] scheme to deny me the building permit justice and due process." (Mahon Aff. I ¶ 17.) It is undisputed, however, that Mr. Mahon was not present at the site when Ortiz issued the summonses. What's more, Mr. Mahon admits that the summonses were justified. (Dep. of Brian J. Mahon, dated Dec. 10, 2004 ("Mahon Dep."), at 171-72.)

Nevertheless, the service of these violations and subsequent court proceedings serve as the basis for Mr. Mahon's civil rights conspiracy claims involving the Islip Supervisor and Suffolk County Department of Social Services. (*See id.* ¶ 16 ("The [Town of Islip] had achieved their goal and destroyed my ability to control my life my property and my destiny.").) Mr. Mahon admitted in deposition, however, that he does not have any proof of any contact between the parties.

Mr. Mahon commenced the present lawsuit on June 7, 2001. In the August 12 Order, the majority of Mr. Mahon's claims were dismissed against the majority of the defendants. The remaining Defendants now move for summary judgment. Plaintiff did not supply a memorandum of law in opposition to the motion, though he did receive notice that a decision on a motion for summary judgment could conclude the proceedings without trial. (*See* Docket Entries 84, Ex. 10, & 87, Ex. 19.) Instead, he submitted two affidavits. (*See* Mahon Aff. I & Mahon Aff. II.)

STANDARDS

Summary judgment is generally appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994) (quoting Fed. R. Civ. P. 56(c)). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and identifying those materials "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When a party is proceeding *pro se*, the Court construes his submissions "to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (citation and internal quotation marks omitted); *see also Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). Nevertheless, "application of this different standard does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (citation and quotation marks omitted).

Once the moving party has offered some evidence that no genuine issue of material fact remains to be tried, the burden shifts to the non-moving party to provide similar evidence indicating that a genuine, triable issue remains. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see also* Fed. R. Civ. P. 56(e). Affidavits submitted in opposition to summary judgment must be based on personal knowledge, must "set forth such facts as would be admissible in evidence," and must show that the affiant is "competent to testify to the matters stated therein." *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 219 (2d Cir. 2004) (citing

Fed. R. Civ. P. 56(e)). When determining whether a genuinely disputed factual issue exists, "a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability," or "the substantive evidentiary standards that apply to the case." *Anderson*, 477 U.S. at 254-55.

In deciding a summary judgment motion, a court must resolve all factual ambiguities and draw all reasonable inferences in favor of the non-moving party. *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir. 1987). That being said, it is well-established that a non-movant cannot defeat summary judgment with nothing more than "unsupported assertions," *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995), or the allegations in its pleadings. *See Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996); *see also* Fed. R. Civ. P. 56(e). More particularly, although "summary judgment should be used sparingly" in cases where the material fact at issue is the defendant's intent or motivation, the plaintiff must nevertheless offer some "concrete evidence" in his favor, and is "not entitled to a trial simply because the determinative issue focuses upon the defendant's state of mind." *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1998). "The summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985).

*DISCUSSION*

In the August 12 Order, the Court noted that the remaining claims were Mr. Mahon's equal protection and substantive due process claims pursuant to § 1983 against Islip, Scimeca,

Simpson, and Suffolk County, as well as the intentional infliction of emotional distress claims against Scimeca and Simpson. (See August 12 Order at 19.)

Mr. Mahon's core claims are the equal protection and due process violations pursuant to § 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C.A. § 1983. The Court first considers Plaintiff's § 1983 claims as to each party, then proceeds to a brief consideration of his intentional infliction of emotional distress claims.

## I.  *Section 1983 Claims against Islip and Scimeca*

Mr. Mahon alleges that Islip and Scimeca violated his equal protection and due process rights.

### A.  *Equal Protection Claims*

Plaintiff claims that Islip and Defendant Scimeca violated his right to equal protection by enforcing certain building regulations against him and not against properties owned by non-profit organizations or single family houses. Thus, Plaintiff has invoked the equal protection right against selective enforcement.

The Equal Protection Clause of the Fourteenth Amendment guarantees the right to be free from "invidious discrimination in statutory classifications and other governmental activity." *Bernheim v. Litt*, 79 F.3d 318, 323 (2d Cir. 1996) (quoting *Harris v. McRae*, 448 U.S. 297, 322 (1980)). "The Equal Protection Clause [thus] requires that the government treat all similarly

situated people alike." *Harlen Assocs. v. Inc. Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001). In order to establish a violation of equal protection based on selective enforcement, Mr. Mahon must show (1) that he, compared with similarly-situated individuals, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as an intent to inhibit or punish the exercise of his constitutional rights. *See Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 15-17 (2d Cir. 1999).

The complaint identifies the American Legion and various, local single-family homes as the similarly situated entities that were not subjected to the same restrictions and penalties as Plaintiff. (*See* Compl. ¶¶ 9-10.) Mr. Mahon's equal protection claim against Defendant Scimeca invokes essentially the same conduct. In the August 12 Order the Court declined to dismiss the equal protection claims because the "allegations contained in the complaint adequately provide notice of a claim for equal protection violations." (August 12 Order at 9.) The Court further noted, however, that the odds of Mr. Mahon's equal protection claims surviving summary judgment were slim. (*See id.*) Such is the case.

A review of the submitted evidence fails to raise even the specter of an equal protection violation. There is no evidence of selective treatment. The American Legion, despite Mr. Mahon's contentions, is simply not similarly situated. It is a membership-based, non-for-profit meeting hall, which stands in stark contrast to Plaintiff's multi-family, residential property. There is no basis for the conclusion that the American Legion and Mr. Mahon are "similarly-situated," so any difference in treatment would not precipitate an equal protection concern.

Aside from the American Legion, Plaintiff has not submitted evidence to indicate that there are any similarly-situated individuals receiving different treatment. When he refers to

differential treatment between his and "conventional households," or households with "blood relatives," he complains of a distinction that has been repeatedly held lawful by the United States Supreme Court. *See City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725 (1995) (holding that zoning codes can limit occupancy to families). The Supreme Court has held that "[t]he police power . . . is ample to lay out zones where family values, youth values, and the blessings of quiet seclusion and clean air make the area a sanctuary for people." *Village of Belle Terre*, 416 U.S. 1, 9 (1974). Further undermining Plaintiff's suit is the fact that he admitted that the summonses served upon him by Islip were justified. (Mahon Dep. at 171-72.) As a result, the actions of Islip along with those of Defendant Scimeca were not only constitutionally permissible, but also reasonable, evincing no selective treatment.

Thus, because it is within the Town's power to create these zoning ordinances, and because the submitted evidence clearly establishes that Plaintiff received no differential treatment, Plaintiff's "selective treatment" equal protection claim must fail.

### B. *Due Process Claims*

Though it is at times difficult to ascertain, it appears that Mr. Mahon brings his due process claim against Islip and Defendant Scimeca because Islip suspended his building permit and refused to reissue it. Islip counters that the suspension resulted directly from Mr. Mahon's own illegal conduct, *i.e.*, renting his property without rental permits and unlawfully changing the use of the house from a one-family dwelling to a multi-family dwelling. (*See* Defs. Islip & Scimeca's Summ. J. Mem. ("Islip Mem.") at 3.)

When an unsuccessful applicant for a governmental permit claims that an official or regulatory body has violated due process, the framework for evaluating the claim is the

well-developed property interest analysis. *See Walz v. Town of Smithtown*, 46 F.3d 162, 167 (2d Cir. 1995). The focus of this analysis is on the nature of the applicant's interest in the approval being sought, specifically whether the applicant had a clear entitlement to the approval sought from the government official or administrative body. *See, e.g., RRI Realty Corp. v. Incorporated Village of Southampton*, 870 F.2d 911 (2d Cir. 1989) (analyzing whether applicant possessed property interest in building permit); *Sullivan v. Town of Salem*, 805 F.2d 81, 84-85 (2d Cir. 1986) (analyzing whether applicant possessed property interest in certificate of occupancy); *Yale Auto Parts v. Johnson*, 758 F.2d 54, 58-60 (2d Cir. 1985) (analyzing whether applicant possessed property interest in permit to use property as automobile junkyard); *T.S. Haulers, Inc. v. Town of Riverhead*, 190 F. Supp. 2d 455, 460 (E.D.N.Y. 2002).

Given the facts of this case, Mr. Mahon cannot establish that he has a clear entitlement to the approval sought from the Town of Islip. The largest obstacle standing between Mr. Mahon and the success of his due process claim is the fact that he pleaded guilty to the various code violations. Additionally, the relevant town ordinance is clearly worded, and there is no suggestion that the Town overstepped its bounds in suspending the building permit because of various code violations on the property.

The suspension of the building permit was based upon Mr. Mahon's failures to comply with the Islip Code's provisions regarding rentals. The Islip Town code requires those who wish to rent out a house to first obtain a rental permit. Section 27-92 of the Islip Code provides:

> It shall be unlawful to use, establish, maintain, operate or let any premises entirely or partially for residence occupancy where any rent is paid or charge is made for such use or occupancy in the Town of Islip without first having obtained a permit therefor. Failure or refusal to procure a permit hereunder shall be deemed a violation.

Plaintiff admits that he never obtained a rental permit, despite the fact that he was housing a number of individuals in the house that had no familial relationship. (*See* Mahon Dep. 148-49.) The express condition of his conditional discharge sentence ordered that he was either to discontinue renting the house or that he had to obtain a rental permit in order to reissue the building permit. (Scimeca Dec. ¶ 4(c); *id.* at Ex. E.) Plaintiff agreed to these terms. Thereafter, Plaintiff admittedly failed to seek a rental permit and did not attempt to evict his tenants for nearly a year and a half. (*See* Mahon Dep. 127-28, 168.)

Mr. Mahon did not have a property right "entitlement" to having his building permit reinstated if he had not remedied the Code violations. He also had the ability to make his case to the town, ultimately plead guilty to the violations, failed to abide by the conditions of their decision, and has made no showing that the Town of Islip in anyway impeded his ability to conform to the town Code. These facts establish there is no basis for a due process claim.

Because the actions of the County and Defendant Scimeca were clearly within their legal authority, and because Plaintiff was offered his day in court, wherein he plead guilty, no reasonable fact finder could conclude that the County or Defendant Scimeca violated Plaintiff's due process rights. Accordingly, finding that Suffolk County and Defendant Scimeca violated neither Plaintiff's due process nor equal protection rights, the § 1983 claims against those parties are dismissed.

## II.     *Section 1983 Claims against Suffolk County*

Mr. Mahon has not named any individual employee of the Suffolk County Department of Social Services, but rather has sued the municipal entity. Accordingly, his claim against the Department of Social Services is treated purely as one against Suffolk County. *See Kentucky v.*

*Graham*, 473 U.S. 159, (1985). In order to establish liability of a municipal defendant, a plaintiff must establish both a violation of his constitutional rights and that this violation was motivated by a municipal custom or policy. *See Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); *see also Coon v. Town of Springfield, Vt.*, 404 F.3d 683, 686 (2d Cir. 2005) ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").

The equal protection claim against Suffolk County emanates from the County's refusal to continue issuing rent payments to Plaintiff. New York Social Services Law § 143-b, entitled "Avoidance of Abuses in Connection with Rent Checks," provides in part:

> [E]very public welfare official shall have power to and may withhold the payment of any such rent in any case where he has knowledge that there exists or there is outstanding any violation of law in respect to the building containing the housing accommodations occupied by the person entitled to such assistance which is dangerous, hazardous, or detrimental to life or health.

N.Y. Soc. Serv. Law § 143-b(2). Mr. Mahon admitted in deposition testimony and in his submitted affidavit that the premises were in horrible, "debauched" condition. (*See, e.g.*, Mahon Aff. II ¶¶ 10-11.) Nowhere does he dispute Suffolk County's conclusion that the premises were "dangerous, hazardous, or detrimental to life or health." Plaintiff has similarly failed to suggest that an accordant custom or policy exists.

Because the submitted evidence does not evidence a constitutional violation of equal protection, the § 1983 claim against Suffolk County is dismissed.

### III. *Section 1983 Claims against Simpson*

Finally, Plaintiff contends that Defendant Simpson violated his due process rights. The Due Process Clause imposes procedural safeguards on governmental decisions that deprive individuals of liberty or property interests, within the meaning of the Fifth or Fourteenth Amendments. *See Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Thus, to prevail on a procedural due process claim under the Fifth and Fourteenth Amendments, a plaintiff must necessarily demonstrate that he was deprived of a protected property or liberty interest. *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995).

In his complaint, Mr. Mahon claims that Defendant Simpson violated his due process rights by "issuing tickets and lying at trial." (*See* Compl. at 6.) Mr. Mahon admitted, however, that his vehicle did not have a license plate and paid the fine. (*See* Suffolk County 56.1 Statement, Ex. E.) Thus, the tickets–issued for failure to properly display the license plate–were issued correctly and Defendant Simpson did not lie at trial when he testified that Mr. Mahon did not have the license plate attached to his car. Therefore, there is no evidence that Defendant Simpson did *anything* wrong regarding the issuance of tickets or during the trial, let alone violate Mr. Mahon's substantive due process rights.

Mr. Mahon also appears to allege that Simpson violated his constitutional rights by "com[ing] to my house on the night in question, as it was clearly a civil property dispute. His search and seizure of the dog 'Star' was done with the implied threat of impending deadly force as he was preparing to unholster his gun." (Mahon Aff. II. ¶ 1.) With the words "illegal search and seizure," Mr. Mahon is clearly invoking his Fourth Amendment rights. Plaintiff's affidavit immediately contradicts itself, however, when he says that Simpson "confiscated and now denies he took the paper establishing the conveyance of the [dog's] ownership," and that "[t]he dog in

question is at this moment lying under the desk I'm typing at possibly awaiting another abduction by P.O. Simpson." (*Id.* ¶¶ 2-3.) First, Mr. Mahon fails to even articulate, let alone show, whether it was the dog or "the paper establishing the conveyance of the [dog's] ownership" that was unlawfully "seized." Second, it is clear from his affidavit that the dog is in his possession at this time. Third, Mr. Mahon does not dispute the fact that Simpson reported to the scene because of a complaint by tenant Ira Mace, nor does he dispute that Simpson's testimony that it was Mace, and *not* Simpson, who allegedly, momentarily confiscated the dog.

As a result of Plaintiff's inconsistent allegations, along with the uncontroverted testimony of Defendant Simpson, it is clear that Defendant Simpson did not violate Plaintiff's equal protection or due process rights. Accordingly, the § 1983 claim against Defendant Simpson is dismissed.

### III. *Intentional Infliction of Emotional Distress*

In order to succeed on a claim of intentional infliction of emotional distress, Plaintiff must have been the victim of "extreme and outrageous conduct, which so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society." *Wyllie v. Dist. Att'y of County of Kings*, 770 N.Y.S.2d 110 (2d Dep't 2003). Plaintiff's causes of action for intentional infliction of emotional distress against Defendants Simpson and Scimeca are based upon conduct that, according to the furnished evidence, was legal and justified as a matter of law. Accordingly, Plaintiff's intentional infliction of emotional distress claims are dismissed.

### *CONCLUSION*

For the foregoing reasons, Defendants' motions for summary judgment are GRANTED. The Clerk of the Court is directed to CLOSE this case.

**SO ORDERED**

Dated: Central Islip, New York
         March 3, 2006

/s/
Denis R. Hurley, U.S.D.J.